UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – x

NORTHWELL HEALTH, INC.,                    :
                                           :
                         Plaintiff,        :    Civil Action No. 19-cv-1071
                                           :
          v.                               :
                                           :    **Jury Trial Requested**
MICHAEL NAGAMATSU D/B/A NORTHWELL          :
and NORTHWELL BRAND, a sole proprietorship, :
and MICHAEL NAGAMATSU, an individual,      :
                                           :
                         Defendants.       :
– – – – – – – – – – – – – – – – – – – – – – x

## <u>COMPLAINT</u>

Plaintiff Northwell Health, Inc. ("Plaintiff" or "Northwell"), through its attorneys,

complaining of Defendants Michael Nagamatsu, d/b/a Northwell and Northwell Brand (a sole

proprietorship) and Michael Nagamatsu (an individual), alleges as follows:

### NATURE OF THE ACTION

1.      This is an action at law and in equity to remedy acts of, inter alia, (1) trademark

infringement under 15 U.S.C. § 1114(1); (2) false designation of origin under 15 U.S.C.

§ 1125(a); (3) unfair competition under the common law of New York; and (4) violation of the

Anticybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d), all caused by

Defendant Michael Nagamatsu d/b/a Northwell and Northwell Brand's (a sole proprietorship)

("Defendant MN") and Defendant Michael Nagamatsu's (an individual) ("Defendant

Nagamatsu," together with Defendant MN, the "Defendants") unauthorized use, among other

places, in the Eastern District of New York of Plaintiff's well known and distinctive service

marks, corporate names and trade names, NORTHWELL HEALTH and NORTHWELL

HEALTH, INC. (collectively, the "NORTHWELL Mark").

2.      Plaintiff is a New York not-for-profit corporation having an office and place of business at 2000 Marcus Avenue, New Hyde Park, New York 11042.

3.      Upon information and belief, Defendant MN is a California sole proprietorship with a place of business at 801 S. Anaheim Blvd, Unit 103, Anaheim, California 92805.

4.      Upon information and belief, Defendant MN is transacting and doing business within this judicial district, is committing the acts complained of herein within this judicial district and is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

5.      By means of illustration only, Defendant MN is advertising, offering for sale and selling baby products such as infant and toddler loungers and resting stations bearing the Infringing Mark (as hereinafter defined) at www.northwell.com (the "Infringing Website"), as well as on Amazon.com and Etsy.com.

6.      The Infringing Website, Amazon.com and Etsy.com each advertise and offer for sale baby products such as infant and toddler loungers and resting stations bearing the Infringing Mark to consumers in all fifty states, including New York, and in particular, the Eastern District of New York.

7.      At least one consumer purchased an infant lounger bearing the Infringing Mark through the Infringing Website for shipment into the Eastern District of New York.  Said lounger was ordered on Friday, February 1, 2019 for delivery to an address in the Eastern District of New York, and was delivered to this address on or about February 11, 2019.  Photos of the product, packaging and shipping label bearing the Infringing Mark are attached collectively as Exhibit A.

8.      Upon information and belief, Defendant MN has shipped and sold other baby products bearing the Infringing Mark to other consumers in the Eastern District of New York.

9.      Upon information and belief, Defendant Nagamatsu is an individual residing at 801 S. Anaheim Blvd, Unit 103, Anaheim, California 92805.

10.     Upon information and belief, Defendant Nagamatsu is the principal of Defendant MN and is the moving, active, and conscious force behind Defendant MN's acts of infringement, unfair competition and cybersquatting alleged herein.

11.     In particular, upon information and belief, Defendant Nagamatsu authorized and approved the acts of infringement, unfair competition and cybersquatting alleged herein.

12.     Upon information and belief, Defendant Nagamatsu is transacting and doing business within this judicial district, is committing the acts complained of herein within this judicial district and is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

13.     Without limiting the generality of the foregoing, N.Y. C.P.L.R. § 302(a) (McKinney) confers jurisdiction over individual corporate officers who supervise and control an infringing activity.

14.     This court has subject matter jurisdiction over Northwell's claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1338, 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

Plaintiff's Well-known NORTHWELL Mark

16.     Northwell is the owner of the NORTHWELL Mark in connection with a wide variety of medical and healthcare and related services.

17.     Northwell is the largest integrated health system in New York State and is also the largest private employer in New York State.

18.     Northwell's vast health system includes 21 hospitals, over 450 community facilities, and a large network of long-term care, rehabilitation, home care, hospice, and medical and nursing schools.

19.     Northwell has approximately 61,000 employees and more than 12,000 member physicians.

20.     Northwell's medical services include delivering babies, as well as providing extensive health and medical services to babies and toddlers, pregnant women and new mothers. *See* pages from Northwell's website at www.northwell.com, copies attached as Exhibit B.

21.     Northwell also provides on-site pharmacies and gift shops in many of its locations which sell baby products and other goods.

22.     Northwell, formerly known as North Shore-Long Island Jewish Health System, Inc., has been operating in New York State for over twenty years.

23.     The name change from North Shore-Long Island Jewish Health System, Inc. to Northwell Health, Inc. occurred pursuant to the filing by the Secretary of State of the State of New York of a Certificate of Amendment to its Certificate of Incorporation on December 4, 2015.

24.     Northwell has been using its NORTHWELL Mark since January 1, 2016, and its name change to Northwell was well publicized months before that, including in such well-known publications as *The New York Daily News*, *The Washington Time*s and *Crains New York* in September 2015.

25.     Northwell's large advertising campaign announcing the name change to the NORTHWELL Mark began running in early January, 2016 and focused on Austin Joseph, the first baby born in a Northwell hospital that year, as well as other babies that would be born that

year.  *See* sample Northwell ad, copy attached as Exhibit C.  It included a 60-second TV commercial that could also be viewed online.  According to an online article in *Ad Age*, during the first six months of 2016, Northwell's ad campaign generated 390 million digital impressions and 13 million people watched its ads online.  *See* https://adage.com/article/cmo-strategy/case-study-a-ny-hospital-chain-overhauled-brand/307566/, copy attached as Exhibit D.

26.     The NORTHWELL Mark has been extensively promoted and received significant positive press and attention from the trade and public.  The marketing campaign for services provided under the NORTHWELL Mark has included commercials on major networks and in Super Bowl 2016, as well as advertisements in such well-known publications as *The New York Times* and *The Wall Street Journal*.  Examples of the marketing campaign are annexed hereto collectively as Exhibit E.

27.     Based on all of the foregoing, the NORTHWELL Mark has gained a secondary meaning as denoting medical and healthcare services (including delivering babies and providing health and medical services to babies, pregnant women and new mothers) and related services (including gift shops selling baby products) of excellent quality and value stemming from Northwell, and the NORTHWELL Mark has become a business asset of immense value to Northwell.

28.     Northwell is the owner of U.S. Registration Nos. 5,014,738 and 5,005,174 for its NORTHWELL Mark for a wide range of medical and healthcare services, with priority filing dates of July 6, 2015 (word mark) and September 22, 2015 (word and design mark).  Copies of these Registrations are annexed hereto as Exhibits F and G, respectively.  These Registrations are in full force and effect and have never been abandoned.

29.     Northwell also has extensive common law rights in marks which include the NORTHWELL element.

30.     Northwell's U.S. Registration No. 5,014,738 ("Northwell's '738 Registration") was filed on July 6, 2015.  Northwell is entitled to rely on this date for purposes of establishing priority over third parties.

<u>Defendants' Infringing Activities</u>

31.     Long after Northwell's adoption and use of the NORTHWELL Mark, and long after the NORTHWELL Mark achieved widespread commercial recognition, on or about September 26, 2018, Defendant MN, without Northwell's authorization or consent, filed a U.S. trademark Application for NORTHWELL (the "Infringing Mark") for baby and household items, including baby loungers, baby changing mats, baby changing platforms and letter boards, which Application was subsequently assigned Serial No. 88/132,591 (the "Infringing Application").

32.     As filed, the Infringing Application alleged first use of the Infringing Mark and first use of the Infringing Mark in commerce since "at least as early as September 25, 2017." This is well after Northwell's first use of the NORTHWEL Mark on January 1, 2016, and also significantly after the July 6, 2015 priority filing date of Northwell's '738 Registration.

33.     Northwell subsequently learned that Defendants are selling baby products, including infant and toddler loungers and resting stations, under the Infringing Mark at the Infringing Website, as well as on Amazon.com and Etsy.com, and that Defendant MN is using the fictitious names Northwell and Northwell Brand (the "Infringing D/B/A's").

34.     Given the identical nature of the parties' marks, and the fact that Northwell's medical services include delivering babies and providing health and medical services to babies, toddlers, pregnant women and new mothers, and that Northwell provides on-site pharmacies and

gift shops in many of its locations which sell baby products and other goods, use of the Infringing Mark and the Infringing D/B/A's creates the false impression that the parties' respective goods and services emanate from the same source or that there is an affiliation, license or other relationship between the parties, when there is not.

35.     The likelihood of confusion is exacerbated because Northwell's popular 2016 ad campaign announcing its name change to Northwell focused on the first baby born at a Northwell hospital that year, which strengthened consumers' association between Northwell and babies.

36.     Upon information and belief, Defendants' acts of infringement, unfair competition and cybersquatting have been willful.

37.     Upon information and belief, Defendants were aware of Northwell's 2016 ad campaign when they started using the Infringing Mark.

38.     On or about November 5, 2018, Northwell, through its counsel, sent a notice letter to Defendant MN's counsel of record for the Infringing Application, putting Defendant MN on notice of Northwell's objections to Defendant MN's use of the Infringing Mark and Infringing D/B/A's and demanding that Defendant MN immediately cease use of the same.  The letter gave Defendant MN until November 25, 2018 to respond.

39.     Defendant MN's counsel did not respond by the aforementioned deadline, nor did Northwell otherwise hear from Defendants.

40.     On or about December 20, 2018, Northwell, through its counsel, sent a notice letter directly to Defendant MN, advising Defendant MN that its counsel had not responded to the original notice letter, and giving Defendant MN until January 9, 2019 to respond.

41.     Defendants have not responded to the notice letter, notwithstanding expiration of the deadline.

42.     Defendants continue to use the Infringing Mark and the Infringing D/B/A's and the Infringing Website.

43.     On or about January 17, 2019, well after both Defendant MN and Defendant MN's counsel received notice letters from Northwell's counsel about the Infringing Mark and the Infringing Application, Defendant MN filed an Amendment to the Infringing Application with the U.S. Trademark Office changing its first use and first use in commerce dates from "at least as early as September 5, 2017" to "at least as early as August 12, 2015."

44.     Northwell does not know why Defendants changed the first use and first use in commerce dates in the Infringing Application, or why, if the August 12, 2015 date is the actual first use and first use in commerce date, Defendants used the September 25, 2017 date initially.

45.     The 2015 date is inconsistent with Defendants' Facebook page, which lists the company's founding date as 2017 and elsewhere on the page indicates "founded in 2016." *See* https://www.facebook.com/pg/northwellbrand/about/?ref=page_internal, copy attached as Exhibit H.

46.     The 2015 date is also inconsistent with Defendants' Facebook post on June 7, 2017, stating "Introducing the #NorthwellBaby product line launching soon!," copy attached as Exhibit I.

47.     Upon information and belief, Defendants knew the August 12, 2015 first use and first use in commerce date was false when Defendant MN changed the date in the Infringing Application.

48.     Even if the August 12, 2015 first use and first use in commerce date is accurate, Northwell still has priority based on the July 6, 2015 filing date of Northwell's '738 Registration.

**COUNT I**

**<u>VIOLATION OF 15 U.S.C. § 1114(1)</u>**

49.     This Count arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 *et. seq.*, particularly under U.S.C. § 1114(1), and alleges infringement of a federally registered service mark.

50.     Northwell repeats and realleges the allegations contained in the preceding Paragraphs as if fully set forth herein.

51.     The use of the Infringing Mark, the Infringing D/B/A's and the Infringing Website by Defendants is without permission or authority of Northwell and such use has been and continues to be in a manner likely to cause confusion, to cause mistake and to deceive. Among other things, Defendants' use of the Infringing Mark, the Infringing D/B/A's and the Infringing Website is likely to lead others to mistakenly believe that the baby and other products offered for sale and sold under the Infringing Mark, the Infringing D/B/A's and the Infringing Website originate from or are in some way associated with, sponsored or endorsed by, or related to Northwell when they not.

52.     The aforesaid and continuing acts of Defendants infringe Northwell's registered NORTHWELL Mark in violation of 15 U.S.C. § 1114(1).  Said continuing violation is causing and, unless enjoined, will continue to cause irreparable harm and damage to Northwell and its business, reputation and goodwill and has caused Northwell to suffer monetary damages in an amount that has yet to be determined.

53.     Unless restrained and enjoined, Defendants' continuing acts of infringement will cause Northwell irreparable harm and damage for which there is no adequate remedy at law.

4846-1453-2230, v. 1

## COUNT II

## <u>UNFAIR COMPETITION UNDER THE LANHAM ACT</u>

54.     This Count arises under the provisions of the Trademark Act of 1946, 15 U.S.C.

§ 1051 *et. seq*., particularly under U.S.C. § 1125(a), and alleges the use in commerce of false

designations of origin and false descriptions and representations.

55.     Northwell repeats and realleges the allegations contained in the preceding

Paragraphs as if fully set forth herein.

56.     Defendants' use of the Infringing Mark, the Infringing D/B/A's and the Infringing

Website is likely to create confusion and to deceive consumers and others as to the source of

origin, sponsorship and/or authorization of Defendants' products sold under the Infringing Mark.

57.     As more fully set forth above, the NORTHWELL Mark has come to have a

secondary meaning indicative of origin, relationship, sponsorship, and/or association with

Northwell.  The purchasing public and others are likely to mistakenly attribute to Northwell the

use by Defendants of the Infringing Mark, the Infringing D/B/A's and the Infringing Website as

a source of origin, authorization, affiliation, and/or sponsorship for Defendants' baby and other

products, and, therefore, to purchase Defendants' products in that erroneous belief.

58.     Defendants' adoption and continued willful use of a mark confusingly similar to

that of Northwell as hereinabove alleged, constitutes a use in interstate commerce and a false

designation of origin or false and misleading description or representation of goods in commerce,

with knowledge of the falsity, and deceptive misdescription, which is likely to cause confusion,

mistake and deception, and in commercial advertising and promotion, misrepresents the nature,

characteristics, qualities and origin of Defendants' baby and other products within the meaning

and in violation of 15 U.S.C. § 1125(a).

59.     Defendants have used in connection with the sale of baby products and related goods, false designations of origin and false descriptions and representations, including words or other symbols, which tend falsely to describe or represent such products and has caused such products to be offered for sale and sold in commerce with full knowledge or willful blindness of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Northwell.  In particular, the use by Defendants of the Infringing Mark, the Infringing D/B/A's and the Infringing Website in connection with baby products and related goods constitutes the use of false descriptions and representations tending falsely to describe products sold by Defendants.

60.     Said continuing violation is causing and, unless enjoined, will continue to cause irreparable harm and damage to Northwell and its business, reputation and goodwill and has caused Northwell to suffer monetary damages in an amount that has yet to be determined.

61.     Unless restrained and enjoined, Defendants' continuing acts of infringement will cause Northwell irreparable harm and damage for which there is no adequate remedy at law.

## COUNT III

## <u>UNFAIR COMPETITION UNDER THE COMMON LAW OF NEW YORK</u>

62.     This claim arises under the common law of the State of New York and alleges the willful and intentional unfair competition by Defendants.

63.     Northwell repeats and realleges the allegations contained in the preceding Paragraphs as if fully set forth herein.

64.     As more fully set forth above, Plaintiff's NORTHWELL Mark has come to have a secondary meaning indicative of origin, relationship, sponsorship, and/or association with Northwell.

-11-

65.     As a result of Defendants' use of the Infringing Mark, the Infringing D/B/A's and the Infringing Website, the trade and purchasing public is likely to believe erroneously that Defendants' baby and related products originate from Northwell or that Defendants' baby and related products are sponsored or endorsed by or affiliated with Northwell, when they are not.

66.     As more fully set forth above, the use by Defendants of the Infringing Mark, the Infringing D/B/A's and the Infringing Website constitutes passing off, unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices wherein Defendants' conduct is likely to cause confusion in the trade as to the source of Defendants' baby and related products or is likely to lead the public to believe that Defendants' baby and related products are in some way connected with Northwell when in fact they are not, all to the detriment of Northwell and in violation of the common law of the State of New York.

67.     Said continuing violation is causing and, unless enjoined, will continue to cause irreparable harm and damage to Northwell and its business, reputation and goodwill and has caused Northwell to suffer monetary damages in an amount that has yet to be determined.

68.     Unless restrained and enjoined, Defendants' continuing acts of infringement will cause Northwell irreparable harm and damage for which there is no adequate remedy at law.

**COUNT IV**

**CYBERSQUATTING UNDER THE LANHAM ACT**

69.     This Count arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 *et. seq.*, particularly under U.S.C. § 1125(d), and alleges cybersquatting under the Anti-cybersquatting Consumer Protection Act.

70.     Plaintiff repeats and realleges the allegations contained in the preceding Paragraphs as if fully set forth herein.

71.     Upon information and belief, Defendants at all relevant times, are and continue to be aware of the goodwill, reputation and value represented and symbolized by the NORTHWELL Mark, and were and continue to be aware that the NORTHWELL Mark is recognized and relied upon by the trade and the public to identify the medical and healthcare services of Northwell (including its medical and healthcare services provided to expectant mothers, mothers and babies, and its sale of baby products in its gift shops) and to distinguish them from the goods and services of others.

72.     Upon information and belief, notwithstanding the reputation and goodwill represented by the NORTHWELL Mark and the Defendants' awareness thereof, and, upon information and belief, precisely because of said awareness, Defendants, upon information and belief, willfully and in bad faith registered, and in bad faith began using in commerce the domain name NORHTWELLBRAND.COM (the "Infringing Domain"), including, without limitation, in connection with the email address for Defendant MN, hello@northwellbrand.com, as evidenced by the contact information on the Infringing Website (*see* Exhibit J).

73.     The Infringing Domain is confusingly similar to the NORTHWELL Mark.

74.     Upon information and belief, the activities of Defendants complained of are willful, intentional, in bad faith and in total disregard of Northwell's rights and were commenced and have continued despite Defendants' knowledge that the unauthorized registration and use of the NORTHWELL Mark or a copy or a colorable imitation thereof as a domain name, including, without limitation, the Infringing Domain, was and is in direct contravention of Northwell's rights.

75.     The registration and use in commerce by Defendants of the Infringing Domain has been without the consent of Northwell, and is likely to cause confusion and mistake in the

-13-

minds of the purchasing public and falsely create the impression that the baby and related products provided under the Infringing Mark are authorized, sponsored, or approved by Northwell when in fact, they are not.

76. Upon information and belief, the activities of Defendants complained of herein were conducted in bad faith and constitute willful and intentional conduct intended to trade on Northwell's reputation.

77. The Defendants' registration and continued use of the Infringing Domain has caused, is causing and, unless enjoined, will continue to cause irreparable harm and damage to Northwell and its business, reputation and goodwill and has caused Northwell to suffer monetary damages in an amount not thus far determined.

78. Unless restrained and enjoined, the Defendants' aforesaid acts will cause Northwell irreparable harm and damage for which there is no adequate remedy at law.

## COUNT V

## CANCELLATION BASED ON LIKELIHOOD OF CONFUSION AND PRIORITY PURSUANT TO 15 U.S.C. § 1119

79. This Count arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 *et. seq.*, particularly under 15 U.S.C. § 1119.

80. Northwell repeats and realleges the allegations contained in the preceding Paragraphs as if fully set forth herein.

81. Based on the likelihood of confusion between Northwell's NORTHWELL Mark and the Infringing Mark, and Northwell's priority of use, any registration resulting from the Infringing Application should be canceled.

WHEREFORE, Northwell demands:

I.      That a preliminary and permanent injunction be issued enjoining Defendants and their agents, servants, employees and attorneys and those persons in active concert or participation with them:

> A.      from advertising, offering for sale or selling any products or services under the Infringing Mark, the Infringing D/B/A's or the Infringing Website, or from otherwise using the Infringing Mark, the Infringing D/B/A's or the Infringing Website or any other mark or name which contains the NORTHWELL element or is confusingly similar to the NORTHWELL Mark, including, without limitation, as a trademark, service mark, corporate name, trade name, certificate of assumed name or domain name;
>
> B.      from unfairly competing with Northwell; and
>
> C.      from using in connection with the sale of any goods or services, a false or misleading description or representation including words or other symbols tending to deceive.

II.     That Defendants be required to pay such actual damages as Northwell has sustained in consequence of the acts of Defendants complained of herein, and that any such monetary award be enhanced up to three times pursuant to the provisions of 15 U.S.C. § 1117.

III.    That Defendants be required to account to Northwell for all profits resulting from Defendants' infringing activities and that such award of profits to Northwell be increased by the Court as provided for under 15 U.S.C. § 1117.

IV.     That Defendants be ordered to pay damages to Northwell in the amount of $100,000 for the Infringing Domain pursuant to 15 U.S.C. § 1117(d).

V.     That Defendants be ordered to transfer to Northwell the Infringing Domain and any other domain name owned and/or controlled by Defendants that contains the NORTHWELL element or a colorable imitation thereof.

VI.     That Defendants be required to abandon the Infringing Application and/or that the Commissioner of Trademarks be directed to cancel any registration resulting from the Infringing Application.

VII.     That the Court find this case to be exceptional and award reasonable attorneys' fees to Northwell.

VIII.     That Northwell have a recovery from Defendants of the costs of this action pursuant to 15 U.S.C. § 1117.

IX.     That Defendants be required to pay to Northwell punitive damages in connection with Northwell's common law unfair competition claim.

X.     That Defendants be ordered to deliver up to Northwell for destruction all signs, labels, stickers, prints, packages, wrappers, receptacles, advertisements and other written or printed material in its possession, custody or control which bear the Infringing Mark and/or the Infringing D/B/A's and/or the Infringing Domain, alone or in combination with any other words, marks or other elements.

XI.     That Defendants be required to advise all relevant trade directories that they are no longer operating under the Infringing D/B/A's.

XII.     That Northwell have all other and further relief as the Court may deem just and proper under the circumstances.

4846-1453-2230, v. 1

<u>JURY DEMAND</u>

Northwell hereby demands a trial by jury on all claims and issues triable by a jury.

Respectfully submitted,


Dated: New York, New York
      February 22, 2019

By: *s/Kenneth P. George*
    Kenneth P. George (KG 1206)
    Holly Pekowsky (HP 5034)

    AMSTER, ROTHSTEIN & EBENSTEIN LLP
    Attorneys for Plaintiff Northwell Health, Inc.
    90 Park Avenue
    New York, New York 10016
    Tel No.: (212) 336-8000
    Fax No.: (212) 336-8001

-17-